# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SHOUP, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JAG WELDING, FAB & SERVICES, INC., a Texas Corporation, etc.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 24-CV-1776 JLS (AHG)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>(ECF No. 9) |

　　　Presently before the Court is Plaintiff Thomas Shoup's Motion for Preliminary Injunction ("Mot.," ECF No. 9), to which Defendant JAG Welding, FAB & Services, Inc. ("JAG") filed a Response ("Resp.," ECF No. 15) and Plaintiff filed a Reply ("Reply," ECF No. 16). Following the close of briefing, JAG filed an Objection to Evidence in Plaintiff's Reply Brief ("Obj.," ECF No. 20). Having considered the briefs, the evidence, and the law, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

/ / /

/ / /

# BACKGROUND

Plaintiff Thomas Shoup, an experienced marine welder, was approached in January 2021 by the Vice President of Vigor Shipyard Seattle with an offer of employment. ECF No. 1 ("Compl.") ¶ 17.[1] Shoup expressed little interest in the offer as he was "committed to working for his family's business," but he indicated that he may be attracted to an alternative arrangement that allowed him to start his own company with the aid of financing. *Id.* To that end, Shoup was introduced to Defendant Douglas Huff, "who was described as a banker and mentor capable of assisting with business formation or investment." *Id.*

Though unclear from the Complaint precisely how it came into existence, a new corporation was formed under the laws of the state of Texas. *Id.* ¶ 18. That corporation was Defendant JAG, *id.*, and though Shoup alleges he "had no involvement in its creation," he nevertheless entered into an Employment, Confidentiality and Non-Compete Agreement ("Agreement") with JAG whereby Shoup "would primarily provide marine welding services for JAG" and serve as Vice President of Operations in exchange for 400 shares of non-voting stock representing a 40% ownership interest in the company. *Id.* ¶¶ 18–22; *see also* ECF No. 9-1 (exhibit attached to the instant Motion evidencing the Agreement).

In addition to describing his position and duties, salary, and other basic terms, the Agreement consists of several provisions at the center of this dispute. Specifically, Section 9 of the Agreement provides for treatment of confidential and proprietary information, Section 10 of the Agreement contains a restrictive covenant clause, and Section 6 of the Agreement covers treatment of Shoup's stock ownership in the event he were to be

---

[1] Due to an administrative mishap, the Complaint—which was embedded within Defendant's Notice of Removal—was not separately filed as an individually paginated exhibit. Thus, all references to the Complaint refer to the Notice of Removal (ECF No. 1), beginning on page ten (10) as identified by the CM/ECF pagination in the top right corner.

terminated for cause.[2] *See* ECF No. 9-1 at 8–13. With respect to Section 6, the Agreement provides that if Shoup's "employment is terminated by [JAG] for Cause, . . . [Shoup] shall also sell his 400 shares of Common stock in [JAG] back to [JAG] in accordance with the strike price and procedures established by the By-Laws of [JAG]." *Id.* at 8.

The termination provision in Section 6 was implicated when, in early 2024, Shoup "approached Defendant Huff regarding renegotiation of his employment contract, ownership interest, etc." due to Shoup's perception that the terms of the contract were unfair. Compl. ¶ 24. Though Huff was at first receptive, Shoup alleges that, "beginning in late July 2024, JAG began fabricating alleged shortcomings and failures in Plaintiff's and performance [sic]," resulting in the initiation of termination procedures for "various purported 'breaches' of his duties as VP of JAG." *Id.* Shoup alleges workplace conditions rapidly deteriorated, with Huff wrongly informing others that Shoup "had been receiving kickbacks from a company called Turn Key Scaffolding" and Defendant Timothy Jagielski falsely telling senior JAG leaders that Shoup "had stolen two million dollars." *Id.* ¶ 25. JAG allegedly provided Shoup with a Performance Improvement Plan ("PIP"), allowing him thirty days to cure his purported deficiencies, but Shoup alleges JAG pressured him into signing the PIP within 48 hours, well short of the time necessary to adequately assess the predicament he found himself in. *Id.* ¶ 27. After Shoup delayed in signing the PIP while seeking legal assistance as to how to properly respond, he was briskly terminated for "job abandonment" just two days after receipt of the PIP. *Id.* Shoup alleges his termination was a pretextual attempt to defraud him out of his true equity stake in JAG. *Id.* ¶ 32.

JAG characterized the above-described termination as "for cause" pursuant to Section 6 of the Agreement and sent Shoup a check in the amount of $34,5000 for his shares, reflecting a strike price of $100 per share. *Id.* ¶ 27. As quick mental math reveals,

---

[2] The Agreement has a lengthy definition of what constitutes "Cause," but examples include, *inter alia*, the "commission of an act of fraud, embezzlement or theft against [JAG] or its parent or subsidiaries," "material breach of this Agreement," or "gross negligence, willful misconduct or any other act of willful disregard of [JAG's] or any of its parent or subsidiaries' best interests." ECF No. 9-1 at 8.

Shoup alleges he was paid out for only 345 shares instead of the 400 shares he was originally entitled to, though he lacks clarity as to how that discrepancy emerged. *Id.* ¶ 23. In any event, Shoup alleges JAG was valued at $17 million, placing the value of his personal shares at over $5 million. *Id.* ¶ 29. Because Shoup believes he was wrongfully terminated "for cause," he claims he was paid out just pennies on the dollar of what he was legally entitled to, depriving him of millions. *Id.*

JAG, for its part, also felt aggrieved by the situation and raced to state court in Texas—pursuant to a venue selection clause in the Agreement—asking for emergency relief based on allegations that Shoup had breached the Agreement.[3] The Texas court granted JAG a temporary injunction on October 18, 2024, enjoining Shoup from soliciting certain JAG employees, competing with JAG by doing business with certain JAG customers, and using JAG's confidential information and trade secrets. *See* ECF No. 9-1 at 24–29. Shoup, in the case at bar, contends the factual basis underlying the Texas temporary injunction was "unequivocally false and fabricated by [JAG] with the sole intent of causing [Shoup] harm while financially benefitting themselves in the process." Compl. ¶ 32.

Shoup initiated this action on September 26, 2024, in San Diego Superior Court. *See* Docket. Shoup asserts nine causes of action, all under California state law—which he says applies despite a choice-of-law clause in the Agreement providing for Texas law to apply—and he seeks both monetary relief and injunctive relief.[4] *See* Compl. ¶¶ 34–98; Compl. at Prayer for Relief. JAG removed the case to this Court on October 4, 2024, *see* ECF No. 1, and Shoup filed the instant Motion on November 25, 2024, *see* Mot. The

---

[3] In Texas, JAG accused Shoup of, among other things, misappropriating trade secrets, breaching his duty of loyalty, and unfairly competing with JAG by soliciting its customers and employees. Compl. ¶ 32.

[4] The nine causes of action are: (1) wrongful termination, (2) breach of employment contract, (3) breach of implied covenant of good faith and fair dealing, (4) intentional interference with prospective economic advantage, (5) defamation, (6) fraud, (7) retaliation, (8) breach of fiduciary duty, and (9) unfair competition. *See* Compl. ¶¶ 35–97.

Motion requests the Court issue a preliminary injunction "enjoining [JAG] from enforcing the non-compete clause in the [Agreement, and] enjoining [JAG] from contacting any of [Shoup's] existing or potential customers and investors." Mot. at 13.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although a plaintiff seeking a preliminary injunction must make a showing on each element, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted).

Generally, a preliminary injunction is considered "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). And importantly, federal courts should exercise extreme caution when asked to meddle in the affairs of the state courts. *Atl. Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970) ("Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the United States Supreme Court].").

/ / /

# DISCUSSION

As noted above, Shoup requests a preliminary injunction prohibiting JAG from (i) enforcing the non-compete clause in the Agreement and (ii) contacting Shoup's existing or potential customers and investors. Based on the following discussion, Shoup has not made a sufficient showing to justify either request because he has failed to show a likelihood of irreparable harm or a likelihood of success on the merits.

To show a likelihood of irreparable harm, a plaintiff must prove more than a mere "possibility" of irreparable harm; instead, "it must be likely that there will be" irreparable harm. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 22). "Speculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." (emphasis in original)); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) ("An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury . . . or a conjectural or hypothetical injury." (internal quotation and citation omitted)). Moreover, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Here, Shoup's Motion is wholly devoid of factual allegations of imminent, irreparable injury. Shoup advances mere conclusory assertions that he "will be forced to either cease working in the only field he is experienced in or face ongoing legal threats from [JAG]," and that JAG "has caused [Shoup] irreparable harm, including loss of goodwill, damage to reputation, and lost business opportunities." Mot. at 12 (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). Shoup may very well be correct that the loss of "newfound customers and accompanying

goodwill and revenue" would suffice to *allege* irreparable injury, but he must also *demonstrate* that injury with evidence. *See Stuhlbarg*, 240 F.3d at 841. Shoup's conclusory allegations in the Complaint and subsequent Motion are insufficient to satisfy the relevant standard for issuance of a preliminary injunction where concrete factual allegations are required. *See Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (reversing district court's grant of preliminary injunction where alleged loss of goodwill and customers was "not based on any factual allegations"); *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) ("The fact that [the respondent's] reputation *might* be harmed by the marketing of [the appellant's] products did not establish that irreparable harm to [respondent's] reputation is *likely*." (emphasis in original)); *Winwin Logistics, Inc. v. Su*, No. 2:15-CV-04624-CAS, 2015 WL 4163363, at *5 (C.D. Cal. July 8, 2015) (denying TRO where the plaintiff had "not proffered evidence that th[e] alleged harm is imminent").

Beyond the allegations in his Complaint, Shoup does attach a Declaration and other evidentiary documents to his Motion, but these largely fail to address the irreparable injury prong. The court documents from the Texas litigation and the character letters written in support of Shoup go more towards the underlying merits of Shoup's claims; similarly, a copy of the Agreement is necessary to undertake a proper contractual analysis but does nothing to demonstrate irreparable harm. *See* ECF No. 9-1. The closest Shoup comes to providing evidentiary support to his claim of irreparable injury is a routine litigation hold letter, dated November 8, 2024, sent from JAG's attorney William Reid to Advanced Integrated Technologies, a JAG client that Shoup was enjoined from conducting business with as a result of the Texas temporary injunction. *See id.* at 20–23. Omitted from Shoup's attachments is any evidence that JAG's alleged communication with certain customers is likely to cause imminent harm to Shoup's goodwill or business opportunities, either as a

///
///
///

result of the litigation hold letter or anything else.[5] Accordingly, Shoup's Motion can be denied solely on the grounds that he has not shown a likelihood of irreparable harm as a "failure to establish one of the *Winter* prongs is fatal" to a motion for preliminary injunction. *See Prime Grp., Inc. v. Dixon*, No. 2:21-CV-00016-RAJ, 2021 WL 1664007, at *7 (W.D. Wash. Apr. 28, 2021) (citing *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018)).

Even if Shoup had shown irreparable harm, his Motion still must be denied for a second, independent reason: He has failed to demonstrate a likelihood of success on the merits. In his Complaint, Shoup asserts nine separate causes of action against JAG, but nowhere in his Motion does he analyze the elements of any of his claims. From the Court's vantage point, it appears as if Shoup's arguments most naturally comport with his claim for unfair competition,[6] but Shoup's claims are all pled under California law and it is not clear to the Court that, as a threshold matter, California law even applies to any of the conduct at issue based on the choice-of-law clause in the Agreement. *See* ECF No. 9-1 at 14 ("This Agreement, the performance thereof, all suits, and special proceedings hereunder shall be construed in accordance with, and under and pursuant to the laws of the State of Texas, without reference to conflicts of law principles."); *see Tri-Union Seafoods,*

---

[5] Shoup attached new evidence to his Reply related to, *inter alia*, text message communications he had with certain of the Defendants, proposed settlement terms, and descriptions of JAG's purported trade secrets. *See generally* ECF No. 16-1. JAG objected to Shoup's use of this evidence on account of the evidence's inadmissibility and the principle that a litigant may not offer new evidence in a reply. *See* Obj. at 2–4. Though JAG's admissibility arguments miss the mark, *see Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016) ("[D]istrict courts may consider inadmissible evidence in the context of a preliminary injunction." (quoting *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015))), JAG is correct that courts decline to consider evidence submitted for the first time in reply, s*ee Talavera v. Glob. Payments, Inc.*, 670 F. Supp. 3d 1074, 1093 (S.D. Cal. 2023). At any rate, none of Shoup's Reply evidence moves the needle on the irreparable harm prong, so the Court need not address JAG's Objection at length.

[6] Indeed, the paragraphs in Shoup's Motion arguing that he is likely to succeed on the merits are airdropped verbatim from the section of the Complaint pleading his ninth cause of action for unfair competition. *Compare* Mot. at 10–11, *with* Compl. ¶¶ 96–97.

*LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1166 (S.D. Cal. 2015) (describing the plaintiff's burden "to demonstrate 'the chosen state's law is contrary to a *fundamental* policy of California' and that 'California has a materially greater interest than the chosen state in the determination of the particular issue' (emphasis in original) (quoting *Washington Mut. Bank, FA v. Superior Ct.*, 15 P.3d 1071 (Cal. 2001))).

      Even if the Court assumes, however, strictly for the purpose of resolving the instant Motion, that California law does indeed apply, Shoup fails to address JAG's argument that his unfair competition claim is foreclosed by California's statutory carveout allowing for limited non-competition agreements restricting a former employee's rights where the former employee was an owner of the former employer and sells or disposes of all of his ownership interest in the company. *See* Opp'n at 20–21 (citing Cal. Bus. & Prof. Code § 16601); *see Blue Mountain Enters., LLC v. Owen*, 289 Cal. Rptr. 3d 239, 252–54 (Ct. App. 2022) (enforcing non-solicitation covenant where former CEO "agreed to sell his remaining interest" after being terminated for cause). Rather than address this argument in his Reply, Shoup merely contends—without any legal authority—that he need only demonstrate a "fair prospect" of prevailing on his claims. *See* Reply at 8. As the Ninth Circuit has long held, a plaintiff seeking a preliminary injunction must at least show that there are "serious questions going to the merits," but Shoup has not met this burden in failing to advance any bona fide resistance to JAG's substantive arguments pertaining to the unfair competition claim. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1126 (9th Cir. 2024) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Thus, the Court cannot conclude that Shoup has shown a likelihood of success on—or serious questions going to—the merits. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007).

      In any event, though not raised in earnest by either of the Parties in their moving

/ / /

/ / /

/ / /

papers for the instant Motion,[7] the Court lacks conviction that it should be in the business of second-guessing the propriety of an authoritative injunction issued by a Texas state court, an independent sovereign warranting respect from this Court. *See Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002) ("The [Anti-Injunction] Act prohibits federal courts from enjoining state court proceedings, which is exactly what occurred here."). True, the relief Shoup seeks in this Court is arguably broader than the injunction issued in Texas, the latter of which was limited to certain JAG employees and customers. But the Court is straining to find any daylight between Shoup's requested relief in this Court (enjoining enforcement of the non-compete clause) and the injunction issued by the Texas court (authorizing enforcement of the non-compete clause). When "substantial questions . . . exist surrounding whether this action even should proceed in this forum[, it] weigh[s] heavily against the granting of preliminary injunctive relief." *See Marcelo v. Ivy Ventures, LLC*, No. C 10-04609 WHA, 2010 WL 5115437, at *7–8 (N.D. Cal. Dec. 9, 2010) ("Other judges in this district and our sister districts in California have either dismissed or stayed proceedings in lieu of parallel state court actions by out-of-state employers involving the breach, validity, and enforceability of covenants not to compete."). As a result, even if Shoup had satisfied the *Winter* factors, it remains uncertain as to whether preliminary injunctive relief would be appropriate.

## CONCLUSION

In sum, Shoup has not adequately demonstrated that he is likely to imminently suffer irreparable harm, nor has he demonstrated that he is likely to succeed on the merits.

---

[7] JAG makes a passing reference to its argument, more fully advanced in its Motion to Dismiss (ECF No. 7) currently pending before the Court, that the Court "should abstain from exercising subject matter jurisdiction in this action under the *Colorado River* abstention doctrine . . . and should dismiss Shoup's claims against [JAG] under the doctrine of forum non conveniens." Resp. at 7. Because the Court can resolve the instant Motion under the irreparable harm and likelihood of success prongs under *Winter*, it need not consider this more elaborate argument now. JAG's abstention argument can and will be more fully considered when the Court resolves the Motion to Dismiss. *See Marcelo v. Ivy Ventures, LLC*, No. C 10-04609 WHA, 2010 WL 5115437, at *8 (N.D. Cal. Dec. 9, 2010) (finding the question of abstention "more appropriate for resolution in defendant's pending motion to dismiss").

Accordingly, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction (ECF No. 9).

**IT IS SO ORDERED.**

Dated: January 10, 2025

Hon. Janis L. Sammartino
United States District Judge